UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHLOEE HOLDEN | CIVIL ACTION |
| VERSUS | NO: 18-13200 |
| ALEJANDROS PERKINS, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE BOARD OF SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA SYSTEM, ET AL. | SECTION: "J"(4) |

## ORDER AND REASONS

Before the Court is a *Motion to Dismiss* **(Rec. Doc. 18)** filed by Defendants, Alejandros Perkins, in his official capacity as Chair of the Board of Supervisors for the Louisiana System; John L. Crain, in his individual and official capacity as President of Southeastern Louisiana University; James Smoot; Jay Artigues; and Justin Bice (collectively "Defendants"). Plaintiff, Chloee Holden, opposes the motion (Rec. Doc. 21). Defendants filed a reply (Rec. Doc. 24), and Plaintiff filed a sur-reply (Rec. Doc. 28). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL HISTORY

This litigation arises from Plaintiff's removal from the Southeastern Louisiana University volleyball team and Southeastern's decision not to renew Plaintiff's athletic scholarship. Plaintiff received an athletic scholarship to play volleyball at Southeastern for the academic year starting August 2016 and running through May

1

2017. The scholarship was renewed for the August 2017 through May 2018 academic year. In Fall 2017, Plaintiff alleges that she and other teammates scheduled a meeting with Athletic Director, Jay Artigues, to discuss Coach Smoot Carter's alleged "emotionally abusive conduct." Shortly thereafter, Artigues notified Plaintiff that she was being removed from the team and that her volleyball scholarship was not being renewed for the following academic year. On November 1, 2017, Artigues sent an email to Plaintiff's mother notifying her of the school's decision and indicating that the decision was final. Plaintiff subsequently requested an appeal with Justin Bice, but her request was denied.

On November 7, 2018, Plaintiff filed suit against Defendants in the 21st Judicial District Court for the Parish of Tangipahoa. Defendants removed the suit to federal court. Defendants now seek dismissal of Plaintiff's federal claims under Rule 12(b)(6).

## **LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal citations omitted). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v.*

2

*Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

### PARTIES' ARGUMENTS AND DISCUSSION

I.  **Plaintiff's Due Process Claims**

Plaintiff alleges that Defendants violated the Due Process Clause of the United States Constitution by failing to provide adequate notice and a hearing concerning the non-renewal of her athletic scholarship. (Rec. Doc. 1-1 at 6). Defendants argue that Plaintiff's due process claim must be dismissed because her petition fails to establish the existence of a sufficient property interest necessary to trigger the right to notice and a hearing under the Fourteenth Amendment. (Rec. Doc. 18-1 at 8). Specifically, Defendants assert that there is no recognized property interest in the

3

renewal of an athletic scholarship. (Rec. Doc. 18-1 at 5). Defendants contend that because Plaintiff was timely notified that her scholarship would not be renewed for the following year, she had neither a reasonable expectation nor a property interest in its renewal. (Rec. Doc. 18-1 at 7). Defendants emphasize that "the Fifth Circuit has never recognized that the failure to renew a college student's athletic scholarship is the type of property right which warrants due process notice and a hearing." (Rec. Doc. 18-1 at 7).

Plaintiff argues in opposition that she adequately states a claim for denial of her due process rights, asserting that Defendants' focus on the distinction between the cancellation of an existing scholarship and the non-renewal of a scholarship is flawed. (Rec. Doc. 21 at 7). First, Plaintiff argues that because Plaintiff did not violate Southeastern's Student-Athletic code of conduct or fail to meet the academic requirements, she had a reasonable expectation that her scholarship would be renewed for the 2018-19 academic year. (Rec. Doc. 21 at 4-5). Second, Plaintiff contends that she has an established liberty interest in her higher education, and courts outside of this circuit have found that students have a protected interest in funds provided through scholarships. (Rec. Doc. 21 at 5-6). Finally, Plaintiff argues that "irrespective of any constitutionally-provided right to procedural due process, the terms of [Plaintiff's] scholarship itself … absolutely guaranteed the hallmarks of procedural due process – notice and an opportunity to be heard prior to any adverse action." (Rec. Doc. 21 at 7).

In reply, Defendants assert that Plaintiff fails to point to any jurisprudential support for her assumption that she has a liberty or property interest in a collegiate education or an athletic scholarship. (Rec. Doc. 24 at 2). Defendants first argue that *Debra P. v. Turlington* does not support a finding of an implied property interest in the renewal of an athletic scholarship. (Rec. Doc. 24 at 2-3). Thus, Plaintiff's expectation that her athletic scholarship would be renewed for the August 2018-May 2019 academic year does not amount to a protected property interest. (Rec. Doc. 24 at 2-3). In response to Plaintiff's assertion that she has an established liberty interest in her higher education, Defendants emphasize that Plaintiff was not expelled or prevented from transferring to another school to play volleyball. (Rec. Doc. 24 at 3-4). Rather, she was invited to return to Southeastern *despite* her removal from the team. (Rec. Doc. 24 at 4). Defendants also assert that the scholarship funds do not amount to a property interest because there was no deprivation of funds for the August 2017-May 2018 academic year. (Rec. Doc. 24 at 4-5). Finally, Defendants argue that even accepting as true Plaintiff's allegation that Defendants failed to provide notice and an opportunity to be heard in accordance with the terms of Plaintiff's athletic scholarship contract, a breach of contract does not equate to a deprivation of due process. (Rec. Doc. 24 at 5). Moreover, there is no property interest in continued participation in intercollegiate athletics. (Rec. Doc. 24 at 6).

Plaintiff argues in response that due process rights are triggered in the instant case because federal courts have recognized that a protected liberty interest exists in

5

higher education and "Defendants' conduct jeopardized [Plaintiff's] ability to remain at [Southeastern]." (Rec. Doc. 28 at 1-2).

The Due Process clause of the Fourteenth Amendment declares that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. There are two types of due process protections: substantive and procedural. *Jones v. Bd. of Supervisors of the Univ. of La. Sys.*, No. 14-2304, 2015 WL 3409477, at *4 (E.D. La. May 27, 2015). To have a procedural due process claim that damages or other relief can remedy, a plaintiff must have been denied life, liberty, or property protected by the Fourteenth Amendment. *Wilson v. Birnberg*, 667 F.3d 591, 597 (5th Cir. 2012) (citing *Meza v. Livingston*, 607 F.3d 392, 299 (5th Cir. 2010)). The Supreme Court has adopted a two-step analysis to examine whether an individual's procedural due process rights have been violated. The first question "asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Meza*, 607 F.3d 392, 299 (quoting *Ky. Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted)).

Substantive due process bars arbitrary, wrongful government action regardless of the fairness of the procedures used to implement them. *Lewis v. Univ. of Tex.*, 665 F.3d 625, 630-31 (5th Cir. 2011); *March Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 673 n. 3 (5th Cir. 2007) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). In order to establish a violation of substantive due process, a plaintiff must first show the existence of a constitutionally protected right to which

6

the Fourteenth Amendment's due process protection applies. *Simi Inv. Co., Inc. v. Harris Cnty, Tex.*, 236 F.3d 240-249-50 (5th Cir. 2000). "If there is no denial of life, liberty, or property, then the government is not required to provide due process." *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 594 (E. D La. 2016). The Supreme Court has explained that for purposes of the due process clause, property interests are created and defined by existing rules or understandings that stem from an independent source such as state law. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). The Court further stated that a protected property interest requires more than a person's abstract need, desire, or unilateral expectation of it; one must instead have a legitimate claim of entitlement to the property interest. *Id*. In addition, although the existence of a property interest must be decided initially by reference to state law, federal constitutional law determines whether that interest rises to the level of entitlement protected by the due process clause. *Shawgo v. Spradlin*, 701 F.2d 470, 475 (5th Cir. 1983) (citing *Winkler v. Cnty of DeKalb*, 648 F.2d 411, 414 (5th Cir. 1981)).

Plaintiff fails to demonstrate how the allegations in her petition amount to conduct violating a clearly established constitutional right. In order to state a claim for a due process violation, Plaintiff must allege (1) the deprivation of a protected property or liberty interest, and (2) that the deprivation occurred without due process of law. *Grimes v. Pearl River Valley Water Supply Dist.*, 930 F.2d 441, 444 (5th Cir. 1991). Regarding the meaning of a "protected property interest," "the hallmark of property ... is an individual entitlement grounded in state law, which cannot be

removed except 'for cause'." *Findeisen v. N.E. Indep. SchoolDist*, 749 F.2d 234, 237 (5th Cir. 1984). A property interest is created when a person has secured an interest in a specific benefit to which the individual has "a legitimate claim of entitlement." *Bd. of Regents of State Colls, v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). However, the interest must be more than an "abstract need or desire" or a "unilateral expectation of the benefit. *Id*.

Here, Plaintiff fails to show—and this Court can find no binding precedent to suggest—that there is a recognized property interest in the renewal of her year-to-year athletic scholarship or her participation on the women's volleyball team. Plaintiff's allegation that she had a reasonable expectation that her scholarship would be renewed and she would receive funds for the following year because she did not violate Southeastern's Student-Athletic code of conduct or fail to meet the academic requirements (Rec. Doc. 21 at 4-5) represents Plaintiff's unilateral expectation and does not constitute a legitimate claim of entitlement to a recognized property interest. Plaintiff's assertion that she has an "established liberty interest in her higher education" (Rec. Doc. 21 at 5-6) is also unavailing. The Fifth Circuit has explained that "[t]he [United States Supreme] Court has not held college academic decisions implicate property or liberty interests, entitling a student to constitutional due-process protections … our court has followed suit." *Smith v. Davis*, 507 F. App'x 359, 362 (5th Cir. 2013) (per curiam). "For example, to the extent our court has addressed this issue, it has held a student who is not denied access to public education does not have a property or liberty interest implicated." *Id*. Moreover, even if Plaintiff

8

could point to binding precedent establishing a liberty interest in her higher education, she failed to allege facts sufficient to show that she has been deprived of her education. After all, Plaintiff was invited to return to Southeastern despite being removed from the volleyball team, and she was not prevented from transferring to another school. Finally, Plaintiff's allegation that "irrespective of any constitutionally-provided right to procedural due process, the terms of [Plaintiff's] scholarship itself … absolutely guaranteed the hallmarks of procedural due process" (Rec. Doc. 21 at 7) does not amount to a recognized property interest. The Fifth Circuit has stated that "[l]iability is imposed for subjecting a person to the deprivation of rights secured by the Constitution and laws of the United States, *not for breach of contract.*" *Braden v. Texas A & M University System*, 636 F.2d 90, 92 (5th Cir. 1981) (emphasis added). Accordingly, because Plaintiff has failed to carry her burden of showing the existence of a protected property or liberty interest, her due process claims against Defendants must be dismissed.

## II. Plaintiff's Equal Protection Claim

Plaintiff also alleges that Defendants[1] are liable for their failure to enforce the NCAA bylaws through the Southeastern Athletic Director in violation of Plaintiff's Equal Protection rights under the United States Constitution. (Rec. Doc. 1-1 at 6). Defendants argue that Plaintiff fails to state a plausible class of one equal protection claim. (Rec. Doc. 18-1 at 9). Specifically, Defendants emphasize that Plaintiff's

---

[1] Plaintiff's petition references only Southeastern University and The Board of Supervisors for the Louisiana System. (*See* Rec. Doc. 1-1 at 6).

petition fails to assert disparate impact and the lack of a rational basis for any alleged disparate treatment given that Plaintiff does not identify any similarly-situated individuals or indicate how they were treated. (Rec. Doc. 18-1 at 9).

Plaintiff argues in opposition that she properly stated a class of one equal protection claim "arising out of the vindictive action taken against her which totally lacked a legitimate animus." (Rec. Doc. 21 at 7). Plaintiff contends that she was denied the right to receive notice and an opportunity to be heard after she complained about "abusive treatment" by her coach, despite the fact that these rights are afforded to all other student athletes. (Rec. Doc. 21 at 9-10).

In reply, Defendants note that Plaintiff's opposition merely asserts that "all other student athletes" are afforded certain rights of notice and hearing, but Plaintiff was denied these rights in retaliation for complaining about her coach. (Rec. Doc. 24 at 6). Defendants emphasize that not only was this allegation not included in the petition, but it is insufficient to state a plausible equal protection claim because it requires the Court to infer how all other student athletes are treated and which, if any, of Defendants' actions were discriminatory. (Rec. Doc. 24 at 6-7). Additionally, Defendants point to a Sixth Circuit decision to support the assertion that Plaintiff's class of one equal protection claim is not cognizable under the facts alleged because the decision not to renew an athletic scholarship is analogous to a one-year employment contract. (Rec. Doc. 24 at 7). Quoting the Sixth Circuit, Defendants argue that "[t]o subject run-of-the-mill coaching decisions to class-of-one equal-protection

challenges would be to expose collegiate athletics to an unprecedented, unjustified, and unjustifiable level of judicial oversight." (Rec. Doc. 24 at 7-8).

Plaintiff argues in response that "[b]ased on the facts alleged, the Court may reasonably infer that [Plaintiff] was treated differently from other students." (Rec. Doc. 28 at 3). Plaintiff emphasizes that her equal protection claim hinges not on the lawfulness of the decision not to renew her scholarship, but rather on whether Defendants' failure to afford her the same due process rights afforded to other student athletes violated Plaintiff's right to equal protection under the law. (Rec. Doc. 28 at 4).

The Equal Protection Clause of the Fourteenth Amendment protects individuals from state governmental action that results in similarly situated individuals being treated differently. *John Corp. v. City of Houston*, 214 F.3d 573, 586 (5th Cir. 2000). To state a claim under the Equal Protection Clause, a plaintiff must demonstrate that she has been treated differently due to her membership in a protected class and that the unequal treatment stemmed from discriminatory intent. *Mills v. City of Bogalusa*, 112 F. Supp. 3d 512, 516 (5th Cir. 2015) (citing *Hampton Co. Nat. Sur., LLC v. Tunica Cnty., Miss.*, 543 F.3d 221, 228 (5th Cir. 2008)). "[A] violation of equal protection occurs only when the government treats someone differently than others similarly situated; if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws." *Brennan v. Stewart*, 843 F.2d 1248, 1257 (5th Cir. 1988).

An equal protection claim requires either identification of a class or showing that the aggrieved party is a "class of one." *Gil Ramirez Grp., LLC v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 419 (5th Cir. 2015). The Supreme Court has recognized successful equal protection claims brought by a "class of one" where a plaintiff does not allege membership in a class or group, but rather alleges that, individually, she has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To establish a "class-of-one" claim, a plaintiff must show that (1) she was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment. *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007) (citing *Olech*, 528 U.S. at 564). The Fifth Circuit recognizes three different types of "class of one" claims: "selective enforcement"; "personal vindictiveness"; and adverse zoning permit decisions. *La. Cmty. Dev. Capital Inv. Fund, Inc. v. Grambling Legends Square Taxing Dist.*, No. 14-2212, 2015 WL 1737954, at *7 (W.D. La. Mar. 16, 2015) (report and recommendation adopted in *La. Cmty. Dev. Capital Inv. Fund, Inc. v. Grambling Legends Square Taxing Dist.*, No. 14-2212, 2015 WL 1800319 (W.D. La. Apr. 16, 2015)). While some circuits have found that "vindictive animus" is necessary for a "class-of-one" claim, the Fifth Circuit "has rejected the argument that all 'class of one' equal protection claims require a showing of vindictive animus. *Cf. Mikesa v. City of Galveston*, 451 F.3d 376, 381 n. 4 (5th Cir. 2006); *Stotter*, 508 F.3d at 824; *Hilton v. City of Wheeling*, 209 F.3d 1005 (7th Cir. 2000). A plaintiff's "class of one" equal protection claim may be dismissed on

12

a Rule 12(b)(6) motion to dismiss if the government's actions are rationally related to a legitimate government interest. *See Capital Inv. Fund*, 2015 WL 1737954, at *9 (dismissing plaintiffs' "class of one" equal protection claim on a Rule 12(b)(6) motion where stated explanation for differential treatment was rational); *XP Vehicles, Inc. v. Dept. of Energy*, 118 F. Supp. 3d 38, 78 (D.C. Cir. 2015) (finding plaintiffs' complaint did not contain sufficient allegations to survive defendant's 12(b)(6) motion to dismiss where there were no other similarly situated individuals and there was a rational basis for the differential treatment).

In the instant case, Plaintiff does not claim that she was discriminated against on the basis of her membership in any particular class and, therefore, must rely on the class of one theory. Liberally construed, it appears that Plaintiff has attempted to assert a "class of one" equal protection claim. Thus, to survive Defendants' motion to dismiss, Plaintiff must have alleged facts which plausibly state that (1) she was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment. *Stotter*, 508 F.3d at 824 (citing *Olech*, 528 U.S. at 564). Plaintiff's petition alleges that her rights were violated when Defendants failed to enforce the NCAA bylaws through the Southeastern Athletic Director. (Rec. Doc. 1-1 at 6). It appears that Plaintiff is referring to NCAA Bylaw 15.3.7, which provides that "a student athlete must receive written notice of a hearing opportunity if aid is reduced or cancelled during the period of award for any reason, *or not renewed for the following academic year*." (Rec. Doc. 1-1 at 3) (emphasis added). Plaintiff's petition does not reference any similarly situated persons. However, in her opposition to the

13

instant motion to dismiss, Plaintiff asserts that "after [Plaintiff] complained of abusive treatment by her coach, she was denied [the right to receive notice and an opportunity to be heard before the non-renewal of her athletic scholarship] … rights that are afforded to *all other student athletes*." (Rec. Doc. 21 at 9-10). Plaintiff, however, provides no facts to support her conclusion that all other student athletes received notice and a hearing. Thus, Plaintiff fails to plausibly state that she was treated differently from others similarly situated.[2]

Even if Plaintiff's petition contained allegations sufficient to establish the first prong of the test enumerated in *Olech*, Plaintiff has failed to plausibly state that there was no rational basis for the disparate treatment. Plaintiff's conclusory allegation that "the vindictive action taken against her … totally lacked a legitimate animus" (Rec. Doc. 21 at 7) is entirely devoid of any factual support. To the contrary, the email from Southeastern's Athletic Director to Plaintiff's mother that Plaintiff references in her petition suggests a rational reason why Defendants may have denied Plaintiff an opportunity for notice and a hearing prior to advising her of the decision not to renew her athletic scholarship. Specifically, Defendants may have determined that it was necessary to make a final decision to remove Plaintiff from the volleyball team and not renew her athletic scholarship on the basis of her athletic ability, her ability to be coached, her attitude, and/or her ability as a teammate. (*See* Rec. Doc. 1-1 at 4).

---

[2] It is noteworthy that Plaintiff alleges that she and "other teammates" scheduled a meeting with the Southeastern Athletic Director to discuss concerns regarding Coach Smoot's behavior toward the student athletes, but she fails to make any allegation in her petition, her opposition, or her sur-reply indicating whether any action was taken against her teammates.

Based on the foregoing, Plaintiff has failed to establish a class of one equal protection claim.

### III. Whether to Relinquish Jurisdiction Over the Remaining State Law Claims

Plaintiff initially filed the instant case in the 21st Judicial District Court for the Parish of Tangipahoa. Thereafter, Defendants removed the case to this Court on the basis of Plaintiff's federal claims, which this Court has now determined must be dismissed. In her opposition to the instant motion to dismiss, Plaintiff urges this Court to decline to exercise supplemental jurisdiction over the remaining state law claims in the event the Court dismisses Plaintiff's due process and equal protection claims. (Rec. Doc. 21 at 2, n. 2). Specifically, Plaintiff asserts that the "state law claims, originally brought by [Plaintiff] in state court, are more appropriately decided there because the case is in its early stages and there is no other basis for this Court's subject matter jurisdiction." (Rec. Doc. 21 at 2, n. 2).

In determining whether to relinquish jurisdiction over pendent state law claims, district courts look to the statutory factors set forth by 28 U.S.C. § 1367(c) and the common law factors of judicial economy, convenience, fairness, and comity. *Enochs v. Lampass Cty.*, 641 F.3d 155, 158-59 (5th Cir. 2011); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (setting forth the common law factors). The statutory factors are: "(1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4)

15

whether there are exceptional circumstances or other compelling reasons for declining jurisdiction." *Id*. at 159 (citing 28 U.S.C. § 1367(c)). The "general rule" is to decline to exercise jurisdiction when all federal claims are dismissed or otherwise eliminated from a case prior to trial. *Smith v. Amedisys Inc.*, 298 F.3d 434, 446-47 (5th Cir. 2002).

Here, the Court finds that the factors cited above militate in favor of declining to exercise supplemental jurisdiction over Plaintiff's state law claims. The Court has determined that Plaintiff's due process and equal protection claims—the claims over which the Court had original jurisdiction—must be dismissed. There is no dispute that the remaining claims involve only issues of state law. The fact that the case was removed to federal court less than six months ago and has not proceeded beyond the motion-to-dismiss stage weighs in favor of the Court declining to exercise supplemental jurisdiction. Moreover, Plaintiff chose to file the instant suit in state court and only finds herself in federal court as a result of Defendants' decision to remove the case on the basis of Plaintiff's federal law claims, which have now been dismissed. Accordingly, the Court concludes that it is appropriate to decline the exercise of supplemental jurisdiction over Plaintiff's remaining claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Enochs v. Lampasas Cty.*, 641 F.3d 155, 159 (5th Cir. 2011) (determining that all statutory and common law factors weighed in favor of remand after all federal law claims were deleted and only state law claims remained). "Federal courts may relinquish jurisdiction by either dismissing the case without prejudice or in cases that have been removed, by

16

remanding [them] to state court." *Bruneau v. Fed. Deposit Ins. Corp.*, 785 F. Supp. 585, 590 (E.D. La. Feb. 21, 1992) (citing *Carnegie-Mellon Univ.*, 484 U.S. at 351). Because this case was removed to federal court, it will be remanded back to state court for resolution of the state law claims.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that the motion to dismiss (Rec. Doc. 18) is **GRANTED**. Plaintiff's due process and equal protection claims are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that all remaining claims in the above-captioned matter are **REMANDED** to the 21st Judicial District Court for the Parish of Tangipahoa, State of Louisiana for resolution.

New Orleans, Louisiana, this 15th day of August, 2019.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE